**REVISED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-30525

RAJIV KHURANA,

Plaintiff-Appellant,

VERSUS

INNOVATIVE HEALTH CARE SYSTEMS, INC.; KARRY TEEL;
CARL HOLDEN; WILLIAM MALONE; I.H.S. RIVER REGION
HOSPITAL OF VACHERIE, LA., INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
December 12, 1997

Before WIENER, PARKER, Circuit Judges, and LITTLE,[*] Chief District
Judge.

PARKER, Circuit Judge:

Dr. Rajiv Khurana appeals the district court's dismissal of
his complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the basis
that he did not have standing to bring his civil claims under the
Racketeer Influenced and Corrupt Organizations Act ("RICO") and

---

[*] Chief Judge of the Western District of Louisiana, sitting by
designation.

alternatively, because Khurana failed to plead a RICO enterprise separate and distinct from the defendant in some of his civil claims based on 18 U.S.C. § 1962(c).  Finding that Khurana may have standing for some of his civil RICO claims, we affirm in part and reverse and remand in part.

## FACTS AND PROCEEDINGS BELOW

For purposes of this appeal, we accept the following factual allegations as true.

Dr. Rajiv Khurana ("Khurana") filed suit in Louisiana state court against the defendant-appellees, alleging defamation and wrongful discharge from his position as Medical Director of River Region Hospital in Vacherie, Louisiana,[1] as well as civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), U.S.C. § 1961 *et seq.*, based on violations of 18 U.S.C. § 1962(b), (c), and (d).[2]  Khurana's civil RICO claims arise from

---

[1]     Khurana's state law claims were remanded to state court following the district court's Fed. R. Civ P. 12(b)(6) dismissal of his RICO claims. Only issues related to the dismissal of Khurana's RICO claims are before the panel.

[2]  18 U.S.C. § 1962(b)-(d) is as follows:

    (b)  It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate of foreign commerce.
    (c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
    (d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or

a Medicare and Medicaid fraud scheme in which the appellees were engaged.

River Region Hospital ("River Region" or "hospital") is an owned subsidiary of Innovative Health Care Systems, Inc. ("Innovative"). Both River Region and Innovative are defendant-appellees in this action. Defendant-appellees also include Karry Teel and Carl Holden, who hold offices in both Innovative and River Region, and William Malone, River Region's administrator.

Khurana is a practicing physician with dual specialities in psychiatry and neurology. In July 1993, Khurana was hired to be River Region's Assistant Medical Director under a three-year contract. Khurana agreed to join River Region as its Assistant Medical Director on the basis of fraudulent misrepresentations as to the legitimacy of the hospital's operations and qualifications. In June of 1994, Khurana was named the hospital's Medical Director. After his promotion, he became aware that the hospital was engaging in fraudulent Medicaid and Medicare practices. He was discharged from his position as Medical Director six months later in January of 1995. The hospital went out of business in 1996.

After the appellees removed the suit to federal court, Khurana filed an amended complaint alleging that the appellees committed a variety of RICO predicate acts (wire and mail fraud, extortion, bribery, witness tampering, and violation of the Travel Act, 18 U.S.C. § 1952) and that these acts constituted a pattern of racketeering activity in violation of § 1962(b) and § 1962(c).

_____

(c) of this section.

Khurana also alleged a conspiracy, in violation of 18 U.S.C. § 1962(d), to violate 18 U.S.C. § 1962(b) and § 1962(c). In his complaint, Khurana contended (1) that he was fraudulently induced into "harmful employment associations" which caused him a loss of legitimate business opportunity and damage to his professional reputation, (2) that he was wrongfully discharged which caused him a loss in earnings, benefits and reputation, and (3) that the appellees' "illegal competition" with him in his private and hospital practices caused him a loss in business income.

The appellees filed a motion to dismiss Khurana's RICO claims pursuant to Fed. R. Civ. P. 12(b)(6). The appellees argued to the district court that (1) Khurana did not have standing to assert the RICO claims, and that (2) Khurana failed to allege a RICO "enterprise" separate and distinct from a RICO "person," i.e., a perpetrator, associated with or employed by the enterprise as required for claims based on 18 U.S.C. § 1962(c). The district court granted the motion and Khurana now presents this panel with the same two issues in his appeal.

## DISCUSSION

### I. Standard of Review

We review the dismissal of a complaint for a failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) *de novo*. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). A claim may not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief.

4

*Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). For purposes of our review, we must accept the plaintiff's factual allegations as true and view them in a light most favorable to the plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

## II. § 1964(c) RICO Standing

The appellant argues that the district court erred in dismissing the RICO claims because proper causation between his injuries and RICO violations was pleaded, giving him standing. The appellees collapse the appellant's injuries into one mass of discharge complaints and contend that Khurana cannot have standing for any of his claims because he was not the target of any Medicaid/Medicare fraud scheme. We disagree that Khurana's alleged injuries may be viewed as a homogeneous group. We consider the injuries individually because Khurana's standing for each turns on a proximate causation inquiry.

### A. Overview of § 1964(c) Standing

Section 1964(c) provides that

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). In order to establish standing under § 1964(c), a plaintiff must show (1) a violation of § 1962, (2) an injury to his business or property, and (3) that his injury was proximately caused by a RICO violation. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S. Ct. 1311, 117 L.

5

Ed. 2d 532 (1992); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1214 (5th Cir. 1988). Khurana challenges the district court determination that his injuries were not proximately caused by RICO violations.

When the Supreme Court announced the proximate cause prerequisite to § 1964(c) standing in *Holmes*, 503 U.S. 258, it directed us to "the many shapes this concept took at common law." *Id.* at 268.

> [W]e use "proximate cause" to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects "ideas of what justice demands, or of what is administratively possible, or of what is administratively possible and convenient." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Law of Torts* § 41, p. 264 (5th ed. 1984).

*Id.* at 268. In *Holmes*, the Court held that an alleged stock manipulation scheme that disabled two broker-dealers from meeting obligations to customers did not proximately cause the claimed injury of a plaintiff-corporation subrogated to the rights of the broker-dealers' non-purchasing customers. Such was too remote an injury to satisfy the proximate cause requirement because only an intervening insolvency connected the RICO conspirators' acts to the customers' injuries. *Id.* at 271. Taking guidance from the common law's enunciation of proximate causation, the Court reasoned that those injured only "indirectly" by racketeering activity do not have § 1964(c) standing.[3] *Id.* at 268, 274. Allowing for recovery

---

[3] The Court noted that in using such a term, it did "not necessarily use it in the same sense as courts before us have." *Holmes*, 503 U.S. at 274 n.20.

6

for the *Holmes'* secondary victims would run afoul of proximate causation standards. *Id.* at 274. In her concurrence, Justice O'Connor explained that the "words 'by reason of' [in § 1964(c)] operate . . . to confine RICO's civil remedies to those whom the defendant has truly injured in some meaningful sense."[4] *Id.* at 279. The proximate cause requirement is intended to preclude recovery by plaintiffs who "complain[] of harm flowing merely from the misfortunes visited upon a third person." *Id.* at 268.

In *Holmes*, the Court acknowledged that articulating a definition of "proximate cause" for purposes of § 1964(c) standing analysis was difficult:[5] "the infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case. Thus, our use of the term 'direct' should be merely understood as a reference to the proximate cause enquiry that is informed by the concerns set out in the text." 503 U.S. at 274 n.20.[6] These concerns have been cited

---

[4] To repeat, 18 U.S.C. § 1964(c) is as follows:

> Any person injured in his business or property <u>by reason of</u> a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including reasonable attorney's fees.

(emphasis added).

[5] In fact, it is generally true that an articulation of the meaning of "proximate cause" is a "fruitless quest for a universal formula." *Prosser & Keeton on Torts* § 42, p. 279. "The search for some test or formula which will serve as a universal solvent for all of the problems of 'proximate cause' has occupied many writers." *Id.* at 276.

[6] In his concurrence, Justice Scalia offered a thought in the same vein.

as the demands of justice, a reluctance to open the flood gates to administratively inconvenient and unmanageable litigation, *Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.*, 985 F.2d 102, 104 (2d Cir. 1993) (citing *Holmes*, 112 S. Ct. at 1316 n.10, 1318), the potential for duplicative recoveries and superfluous deterrence, *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 401 (2d Cir. 1994), and the statutory goal of encouraging directly injured victims to act as private attorneys general to vindicate the law, *Mendelovitz v. Vosicky*, 40 F.3d 182, 185 (7th Cir. 1994); *Bieter Co. v. Blomquist*, 987 F.2d 1319, 1325 (8th Cir. 1993).

Given that factual causation (i.e., "cause-in-fact" or "but-for" causation) is now clearly insufficient to confer § 1964(c) standing, *see, e.g., Standardbred*, 985 F.2d at 104, we are left with the common law of proximate causation in making civil RICO standing determinations. "[T]he holding of *Holmes* is no more than that common law ideas about proximate causation inform the understanding of RICO." *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1257 (7th Cir. 1995), *cert. denied*, — U.S. —, 116 S. Ct. 1847, 134 L. Ed. 2d 948 (1996). The pertinent inquiry in determining the existence of proximate, or "legal," cause is "whether the conduct has been so significant and important a cause that the defendant should be held responsible."

---

> The degree of proximate causality required to recover damages caused by predicate acts of sports bribery, for example, will be quite different from the degree required for damages caused by predicate acts of transporting stolen property.

503 U.S. at 288 (Scalia, J., concurring) (statutory citations omitted).

*Chisholm v. TransSo. Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996) (quoting *Prosser & Keeton on Torts* § 42, p. 272 (5th ed. 1984)). The proximate cause determination for RICO standing is guided by indications of preconceived purpose, specifically intended consequence, necessary or natural result, reasonable foreseeability of result, the intervention of independent causes, whether the defendant's acts are a substantial factor in the sequence of responsible causation, and the factual directness of the causal connection. *See, e.g., Chisholm*, 95 F.3d at 338; *In re Am. Express*, 39 F.3d at 400; *Standardbred*, 985 F.2d at 104.

B. **Termination as a Result of a § 1962(b) or § 1962(c) Violation**

Khurana claimed that he was discharged from his position as Medical Director of River Region Hospital because he refused to participate in and attempted to stop the appellees' RICO activities and that his discharge was an act in furtherance of the appellees' fraud scheme. Those claims are foreclosed for a § 1962(b) or § 1962(c) violation. In *Cullom v. Hibernia Nat'l Bank*,[7] we held that an employee who refuses to participate in an activity that violates RICO and is constructively discharged for such a refusal does not have standing to sue under § 1964(c). 859 F.2d 1211, 1212 (5th Cir. 1988). We found that such a situation lacked the necessary "causal connection" between the discharge and the predicate acts. *Id.* at 1216 (discussing and relying on RICO "whistle blower" cases

---

[7] While *Cullom* predated *Holmes*, like *Holmes*, it imposed a proximate causation requirement for § 1964(c) standing. Thus, *Holmes* did not disturb the our holding in *Cullom*.

and citing *Sedima*, 473 U.S. 479). In order to have standing, Khurana's injury, here his discharge, must "flow from the commission of the predicate acts." *Id.* (quoting *Sedima*, 473 U.S. at 497). In our proximate causation discussion in *Cullom*, we explained that "Cullom's injury resulted from SNB's decision to fire him after he refused to participate in the alleged scheme . . . [N]either Cullom's injury nor SNB's decision to fire Cullom resulted from the alleged predicate acts." *Id.* at 1216.

Just as in *Cullom*, Khurana pleaded predicate acts for the alleged violations which did not proximately cause his termination. Accordingly, Khurana lacks standing to bring a civil claim asserting termination injuries resulting from a § 1962(b) or § 1962(c) violation.

## C. Loss of Business Income as a Result of "Illegal Competition" with Khurana's Hospital and Private Practices

We confront the same standing questions with respect to Khurana's standing to bring his civil RICO claim for "illegal competition:" was there (1) an alleged injury to property or business (2) proximately caused by (3) a RICO violation? *See Holmes*, 503 U.S. at 258; *Cullom*, 859 F.2d at 1214.

Khurana alleges that the defendants illegally competed with his post-termination medical practice. The defendants treated psychiatric patients for which they illegally obtained Medicaid and Medicare reimbursement, thus depleting the available number of reimbursable patients in the region, some of whom might otherwise have been treated by Khurana and other area hospitals at which he

10

practiced.

Khurana's loss of business income is too remote to satisfy the proximate causation requirement. *See Holmes*, 503 U.S. at 267, 272 ("direct-injury limitation [is] among the requirements of § 1964(c)"). Khurana's injury does not "flow," *Sedima*, 473 U.S. at 497, from either the conspiracy to engage in a pattern of racketeering activity or from any engagement in a pattern of racketeering activity. There are intervening factors between the defendants' fraudulently obtaining Medicaid and Medicare reimbursement and Khurana's loss of business income, *e.g.*, a significant reduction of the available pool of patients in that market, patients' choices of physicians, Khurana's ability to accommodate additional patients, and exhaustion of state-allocated funds. Justice Scalia offered an apt observation in his concurrence in *Holmes*.

> Life is too short to pursue every human act to its remote consequences; "for want of a nail, a kingdom was lost" is a commentary on fate, not the statement of a major cause of action against a blacksmith.

503 U.S. at 287. The necessary contributing factors to this injury to Khurana make it clear that such an injury was not proximatley caused by the defendants. *See, e.g., Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924 (9th Cir. 1994) (finding proximate cause lacking because plaintiff subleased office space from another entity and direct harm ran to the master tenant since plaintiff's harm was contingent on the master tenant's decision to pass the rent increase through to the subletter-plaintiff); *Imagineering Inc. v. Kiewet Pacific Co.*, 976 F.2d 1303, 1312 (9th Cir. 1992)

11

(finding no "direct relationship" between defendants' conduit scheme and plaintiffs' failure to earn certain profits on subcontracts because intervening inability of prime contractors to secure the contracts was direct cause of plaintiffs' injuries); *Firestone v. Galbreath*, 976 F.2d 279, 284, 285 (6th Cir. 1992) (finding only indirect injury where grandchildren alleged that defendants stole from grandmother during her lifetime, thus decreasing the size of her estate and their inheritance); *cf., e.g., Beiter Co. v. Blomquist*, 987 F.2d 1319 (8th Cir. 1993) (finding proximate cause where bribery of council member could have caused rejection of developer's development proposal). In addition, Khurana was a distanced victim of any "illegal competition;" the state and federal government were more directly injured. *See Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 289 (3d Cir. 1996) (noting that Medicare and Medicaid programs and taxpayers are victims of Medicaid/Medicare fraud). As such, the risk of multiple recoveries indicates an absence of proximate cause in the same fashion in which it is absent in the case of shareholders' RICO claims that are derivative of a corporation. *See Holmes*, 503 U.S. at 273; *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) (finding no "direct relation" because shareholder's injury is generally derivative of injury to corporation and thus not directly related to defendant's injurious conduct). Khurana thus lacks § 1964(c) standing for all of his RICO claims premised on any injuries from "illegal competition."

**D.    Loss of Opportunity and Damage to Professional Reputation as a Result of "Fraudulent Hiring"**

12

Khurana's set of RICO claims based on injuries resulting from being hired at River Region must be examined under the same proximate causation requirement.

### 1. Loss of Business Opportunities and Damage to Professional Reputation as a Result of Substantive RICO Violations

The injuries pleaded by Khurana are denigration to his professional reputation via the "harmful employment associations" that resulted from being "fraudulently lured" into his position at the hospital and the loss of foregone legitimate employment opportunities. In *Sedima*, the Court held that the injury relied on by a plaintiff must be the result of a § 1962 violation. 473 U.S. at 496. The Court explained that for standing based on a § 1962(b) or § 1962(c) violation, a valid RICO injury must necessarily stem from predicate acts that underpin the § 1962 violation. *Id.* at 497. The necessary racketeering activities are those activities catalogued in § 1961(1). *Id.* at 495. Khurana contends that the defendants caused him injury by fraudulently inducing him to accept employment via mail and wire fraud, thereby damaging his reputation through association with their fraudulent activities and depriving him of other legitimate business opportunities.

### a. Professional Reputation Damage

Khurana pleaded injury proximately resulting from the defendants' violations of § 1962(b) and § 1962(c) when he asserted the injury of business reputation harm. For § 1962(b) and § 1962(c) violations, the injurious conduct must be racketeering acts

13

as listed in § 1961(1). According to Khurana's pleadings, he detrimentally relied on the appellees' misrepresentations as to the legitimacy of the hospital's operations in taking his position with the hospital. Such reliance on a predicate fraud act can indicate the necessary proximate relationship between the injury asserted and the injurious conduct. *See Chisholm v. TransSo. Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996) (citing cases); *Standardbred*, 985 F.2d at 104. In *Standardbred*, the defendants acquired a race track financed by municipal bonds. In the application for the bonds, the defendants stated an intent to operate the race track and assured the plaintiffs of such as well. The defendants subsequently stopped racing. The Second Circuit held that the plaintiffs had § 1964(c) standing because in the fraudulently induced belief that the racing would continue, they purchased, relocated and reconstructed capital equipment for use at the track and designed their purchases and training of horses with the intent to race them at the track. Khurana similarly relocated himself and his medical practice to this hospital, a significant financial and professional decision, allegedly as a result of the appellees' misrepresentations as to the legitimacy of the hospital's operations.

In addition, the damage to Khurana's professional reputation was a foreseeable result of the various racketeering acts of wire and mail fraud. *See* discussion *supra* Part II.C. Khurana, as the hospital's director, was essentially the figurehead of a fraud-ridden, now defunct institution. The act of fraudulently hiring

14

him can be a proximate cause of any damage that his professional reputation has suffered. Damage to his professional reputation is easily seen as a natural outgrowth of such an employment association. As the predicate acts were pleaded as responsible for Khurana's acceptance of his employment with River Region, we find that the pleadings presented the claim of necessary proximate cause for Khurana's standing for this claim. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (finding proximate cause where defendants' conduct was substantially responsible for claimed injuries); *see also generally Prosser & Keeton on Torts* § 41, p. 268 (discussing substantial responsibility and proximate cause).

### b. Legitimate Employment Opportunity

Regarding Khurana's claimed loss of legitimate business opportunity, we begin our consideration by noting that RICO civil standing is not limited to only the immediate victim of a defendant's RICO violation. *See Zervas v. Faulkner*, 861 F.2d 823, 823, 833 (5th Cir. 1988) ("A requirement that the nexus between the injury and a predicate act be 'direct' may . . . be overly restrictive."); *Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 263 (4th Cir. 1994) (rejecting adoption of a rule that only injuries suffered by the immediate victim of a predicate act satisfy the "by reason of" requirement of § 1964(c)). In *Mid Atlantic*, a plaintiff telephone company accused one of its competitors of violating RICO by defrauding its customers with fictitious charges, enabling it to charge lower rates to entice new

15

subscribers. The plaintiff company alleged that it lost revenues from subscribers who were defrauded into accepting the fraudulent lower rates of the defendant company. The Fourth Circuit rejected the argument that the plaintiff company lacked standing because the customers were the directly injured parties and only they were proximately injured by its alleged misconduct. Similarly, Khurana may not have been the intended target of the fraud scheme, but like the telephone company in *Mid Atlantic*, he pleaded the loss of a legitimate business opportunity resulting from the defendants' alleged racketeering acts. *Holmes* did not preclude a RICO claim for "indirect" injuries, but rather instructed the federal courts to employ common law proximate causation principles. *See Israel Travel*, 61 F.3d at 1257. Some indirect RICO injuries, such as this one, satisfy the proximate causation requirements of common law. *Id.* In fact, we have previously rejected a direct versus indirect injury test as the dispositive standing inquiry for civil RICO claims. *See Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 746 (5th Cir. 1989); *see also Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249 (7th Cir. 1989) (avoiding using direct versus indirect terminology to make standing determinations and instead focusing on causation); *Prosser & Keeton on Torts* § 42, p. 273-74 (discussing direct versus indirect as only one of several theories of proximate causation).

In *Mid Atlantic*, the Fourth Circuit noted that the plaintiff was not seeking to vindicate the claims of its competitor's customers, but rather its own alleged distinct and independent

16

injuries of lost customers and lost revenues. *Id.* at 264. We agree with the Fourth Circuit that distinct and independent injuries are in keeping with the Supreme Court's understanding of proximate cause in *Holmes*. Khurana pleads his own injury of loss of legitimate employment opportunity. In *Holmes*, an intervening event, the insolvency of the securities brokership, broke the causal link between the plaintiff's injury and the defendant's conduct, 503 U.S. at 262, 264, so that the plaintiff was a "secondary victim." *Id.* at 273. In contrast, the plaintiff in this case seeks to recover for losses substantially attributable to the defendants' conduct.

Finally, as explained before, the fact that Khurana pleaded reliance on the defendants' racketeering acts as a cause of this injury indicates a valid claim that the racketeering acts proximately caused him to forego other legitimate business opportunities. *See Chisholm*, 95 F.3d at 337; *Standardbred*, 985 F.2d 102. Khurana claims that he was fraudulently induced to take his position with the hospital and argues that such proximately caused him to lose other legitimate business opportunities. As Khurana's loss of other employment opportunities was foreseeable by the defendants and could certainly be anticipated as a natural consequence of their alleged misrepresentations, Khurana has sufficiently pleaded that the alleged substantive violations of § 1962(b) and § 1962(c) proximately caused his business opportunity loss. *See Chisholm*, 95 F.3d at 337 (relying on plaintiff's detrimental reliance on defendants' material misrepresentations to

17

find proximate cause and noting that "[i]n order for the scheme to succeed, the appellants needed to be convinced that the 'private sales' referenced in the TransSouth notices were legitimate . . . . concealment of the nature of the 'private sales' was the very linchpin of the scheme."); *cf. Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1170 (3d Cir. 1989) (affirming the dismissal of a RICO claim based on a "loss" of the plaintiff's former job where there was no allegation that the employer reneged or the plaintiff was "duped out of her old job").

- **Standing for a § 1962(d)-based Civil RICO Claim for Loss of Business Opportunity and Damage to Professional Reputation as a Result of Hiring**

Khurana pleaded that the defendants conspired to commit RICO violations, and in doing so, injured his professional reputation and caused him a loss of legitimate business opportunity. In *Cullom*, we held that a "retaliatory" discharge lacks sufficient causation for § 1964(c) standing for a substantive RICO violation. However, *Cullom* was limited to a causation inquiry and did not address standing for a RICO civil claim premised on conspiracy acts, *i.e.*, acts in furtherance of a conspiracy to commit a pattern of racketeering, a violation of § 1962(d).[8]

There is a division of circuit authority on the question of

---

[8] In this section we consider civil standing for a § 1962(d) violation. Based on our previous discussion in Part II.D.1., we also recognize that Khurana pleaded proximate cause for § 1962(d) violations causing reputation damage and business opportunity loss where the § 1962(d) violations are predicated upon the racketeering acts of wire and mail fraud already discussed. Accordingly, we also reverse the district court's dismissal of Khurana's claims on that basis, subject to our discussion in Part III in which we affirm the dismissal of some of Khurana's claims as to the corporate defendants.

whether § 1964(c) civil RICO standing for a § 1962(d) violation may be premised on injury proximately caused by overt acts in furtherance of the conspiracy that are <u>not</u> § 1961(1) predicate acts. *See Reddy v. Litton Indus., Inc.*, 502 U.S. 921, 921, 112 S. Ct. 332, 332, 116 L. Ed. 2d 272 (1991) (White, J., dissenting from denial of *certiorari* and noting circuit split); *Bowman v. Western Auto Supply Co.*, 985 F.2d 383, 386 (8th Cir. 1993) (collecting cases). The Third and Seventh Circuits have held that the injurious acts for § 1964(c) standing for a claim based on a § 1962(d) violation may be racketeering acts as listed in § 1961(1) <u>as well as</u> overt acts in furtherance of the conspiracy. *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344 (7th Cir. 1992) (adopting reasoning of *Shearin*); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir. 1989); *see also Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 958-59 (7th Cir. 1996) (reviewing circuit split and following *Schiffels*); *Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 290 & n.6 (3rd Cir. 1996) (noting circuit split and applying *Shearin).* In contrast, for example, the Second Circuit has held that because a conspiracy, an agreement to commit predicate acts, cannot by itself cause any injury and because RICO's purpose is to target RICO activities and not other conduct, standing may be founded <u>only</u> upon injury from overt acts that are also § 1961 predicate acts, and not upon overt acts furthering a RICO conspiracy. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1344-45 (2d Cir. 1994).

Section 1962(d) provides that "[i]t shall be unlawful for any

19

person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." It is well-established that we must follow a plain meaning statutory interpretation unless a statutory provision presents an ambiguity or an inconsistency with a statute's legislative purposes. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989). Like the Seventh Circuit, we refuse to place "a limitation on RICO standing that RICO itself does not impose." *See Schiffels*, 978 F.2d at 346. Since § 1962(d) does not require that a predicate racketeering act actually be committed, it follows that the act causing a § 1964(c) claimant's injury need not be a predicate act of racketeering. A person injured by an overt act in furtherance of a RICO conspiracy has been injured by reason of the conspiracy, and thus has § 1964(c) standing. *See Id.* at 349. To interpret otherwise would ignore § 1964(c)'s provision for civil liability for, *inter alia*, a violation of § 1962(d) that proximately injures a person's property or business. Buttressing this position is the Supreme Court's and Congress's direction that "RICO is to be read broadly" and "'liberally construed to effectuate its remedial purpose.'" *Sedima*, 473 U.S. at 497-98 (quoting Pub. L. No. 91-452, § 904(a), 84 Stat. 947).

In addition, while the Second Circuit noted that RICO was designed to combat substantive violations, *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990), the provision for conspiracy violations was part and parcel of Congress's intent and plan and cannot be ignored. *See Sedima*, 473 U.S. at 499

20

(noting that although RICO used in ways not originally envisioned, Congress and not the courts must amend statute).

Having determined that Khurana's standing is not precluded by the necessity of causative racketeering acts, we must consider whether his pleading sufficiently alleges proximate causation for § 1964(c) standing premised on an underlying § 1962(d) violation.

In *Shearin*, the Third Circuit held that the plaintiff's hiring as window dressing and firing to preserve the fraud both qualified as <u>conspiracy acts</u> for a § 1962(d)-based civil claim.

> Shearin's hiring and firing plausibly constitute overt acts that not only would establish a conspiracy, but in this case were allegedly essential to it. Assuming that the hiring and firing were injuries, those injuries did occur "by reason of" Hutton's violation of section 1962(d).

885 F.2d at 1168-69. Similar facts are presented here. Hiring Khurana allegedly allowed the defendants to pose as a medical facility qualifying for federal funds, which allowed them to fraudulently obtain Medicare and Medicaid reimbursement. As in *Shearin*, it appears that the hiring of Khurana was an overt act critical to the conspiracy. As the hiring of Khurana was an alleged predicate conspiracy act, any lost opportunity for legitimate employment and damage to professional reputation "flowed" from RICO predicate acts, *see Cullom*, 859 F.2d at 1215, and Khurana has pleaded the necessary proximate cause for his claim of hiring injuries based on a § 1962(d) violation. Khurana thus has cleared, from a pleading standpoint, the proximate cause hurdle for standing for these claims.

**E.    Standing for a § 1962(d)-based Civil Claim for**

**Termination Injuries**

We explained earlier that Khurana does not have standing under § 1964(c) to pursue a § 1962(b) or § 1962(c) claim for termination injuries. However, he may have § 1964(c) standing to pursue a claim for termination injuries as a result of an act in furtherance of a conspiracy. RICO racketeering acts as well as acts in furtherance of a RICO conspiracy may provide standing to sue for civil conspiracy claims if they are the proximate cause of an injury.

Khurana alleged that he was discharged from his position as Medical Director in furtherance of the appellees' scheme of Medicaid fraud. "The discharge was intended to remove Plaintiff from continuing to have access to information about defendants and to intimidate him to hinder and prevent his testimony as a witness in future proceeding," "to eliminate his access to information concerning the defendants' illegal activities" and was an act "to maintain control of and conduct" the enterprise. In addition, and probably most importantly, Khurana alleges that terminating him had the effect of rescinding Khurana's order of ten days previous in which Khurana suspended the admission to the hospital of illegal Medicaid patients. Khurana alleges that he was terminated so that the defendants could "continu[e] their illegal procurement of Medicaid and Medicare funds and minimiz[e] impediments thereto." As such, Khurana has presented the necessary proximate causation for standing to pursue his claim for termination injuries because the termination was an alleged overt act in furtherance of the

22

alleged RICO conspiracy. Such an allegation presents sufficient causation to confer standing. *See Rehkop*, 95 F.3d at 290-91 (holding that the plaintiff's termination constituted an overt act in furtherance of an alleged conspiracy and thus the plaintiff had RICO standing); *Schiffels*, 978 F.2d at 350-51 (holding that a plaintiff-employee may have RICO standing when he alleges that he was fired in an attempt to prevent him from causing the conspiracy to unravel by disclosing scheme); *Shearin*, 885 F.2d at 1170 (holding that allegation that plaintiff was fired in furtherance of a conspiracy in violation of § 1962(d) stated a claim for relief under § 1964(c)); *White v. Hall*, 683 F. Supp. 639, 642 (E.D. Ky. 1988) (finding civil RICO standing for discharged employee for alleged § 1962(d) violation where the plaintiff alleged that part of conspiracy was to cover up illegalities by terminating employees refusing to participate in schemes).

## III.     The Enterprise-Person Distinction for a § 1962(c) Violation

Khurana also contends that the district court erred in dismissing his claims under 18 U.S.C. § 1962(c) and § 1962(d) (to the extent involving a conspiracy to violate § 1962(c)) for failure to plead a RICO enterprise which is separate and distinct from the RICO person referenced in § 1962(c).

We must consider this contention in relation to Khurana's remaining § 1962(c) claims. The remaining § 1962(d) claims must also be considered in relation to this issue to the extent that they are based on a conspiracy to commit a § 1962(c) violation. *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). Section 1962(c)

23

provides that

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The statutory definition of enterprise includes "any individual, partnership, corporation, association, or other alleged legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Khurana alleged that the enterprise is an association-in-fact of all five defendants (the three individuals and the two corporate entities).

The district court dismissed Khurana's claims that were bottomed on § 1962(c) on the alternative basis (from the dismissal on the basis of standing) that Khurana failed to plead a RICO defendant that was distinct from the enterprise in his § 1962(c)-premised claim and his claim based on a conspiracy to commit a § 1962(c) violation in violation of § 1962(d).

For purposes of a claim based on § 1962(c), RICO persons associated with or employed by an enterprise must be distinct from the RICO "enterprise." *Crowe v. Henry*, 43 F.3d 198, 205-06 (5th Cir. 1995). Section 1962(c) imposes liability on an employee or associate of an enterprise conducting affairs of the enterprise through a pattern of racketeering activity and, logically, such an individual cannot employ or associate with itself. *See, e.g., Ashe*, 992 F.2d at 544. Accordingly, some of Khurana's claims that

24

are based on 18 U.S.C. § 1962(c) fail because his pleadings do not contain a sufficient distinction between the persons who allegedly committed the unlawful acts and the enterprise with which they are employed or associated.

Khurana has failed to plead a corporate defendant distinct from the enterprise in that the association-in-fact enterprise that he pleaded is in reality a "stand-in," or another name, for the corporate entity. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). By alleging as a RICO enterprise a group consisting solely of a bank and several of its employees, the plaintiffs in *Riverwoods Chappaqua* effectively identified the RICO enterprise as the corporate defendant. The distinctiveness requirement may not be avoided

> by alleging a RICO enterprise that consists merely of a corporation defendant associated with its own employees or agents carrying on the regular affairs of the defendants . . . . Where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

*Id.* While it is theoretically possible for a corporation to play a separate active role in RICO violations committed by its employees and agents, *see Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263 (2d Cir. 1995), *cert. denied*, — U.S. —, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996); *Brittingham v. Mobil Corp.,* 943 F.2d 297, 302 (3d Cir. 1991); *Petro-Tech, Inc. v. Western Co. of No. Am.*, 824 F.2d 1349, 1361 (3d Cir. 1987), when the alleged association-in-fact entity is in reality no different from the

association of individuals or entities that constitute a defendant "person" and carry out its activities, the distinctiveness requirement is not met in regard to that defendant. *See Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 583-84 & n.3 (5th Cir. 1992) (finding an association-in-fact of employees of corporation to be the defendant corporate entity functioning through its employees in the course of their employment); *Glessner v. Kenny*, 952 F.2d 702, 712 (3d Cir. 1991); *Brittingham*, 943 F.2d at 302 ("Without allegations or evidence that the defendant corporation had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf, the distinctiveness requirement is not satisfied."). Khurana has not alleged that defendants River Region Hospital or Innovative had any active role in the activities of its affiliated entity, employees or officers. *See Glessner*, 952 F.2d at 712 & n.10. In fact, Khurana alleged the exact opposite, terming the corporate entities "passive instruments" in his complaint.

In addition, the distinctiveness requirement is not satisfied by pleading a subsidiary corporation or affiliated entity as a perpetrator-defendant if the parent corporation and the subsidiary's roles in the alleged racketeering activities are not sufficiently distinct. *Discon, Inc. v. Nynex Corp.*, 93 F.3d 1055, 1063-64 (2d Cir. 1996) (distinctiveness requirement not satisfied where three corporate defendants that constituted alleged enterprise, although legally separate, "operated within a unified corporate structure" and were "guided by a single corporate

consciousness"), *cert. denied*, — U.S. —, 118 S. Ct. 49, — L. Ed. 2d — (1997); *Compagnie De Reassurance D'Ile de France v. New England Reins. Corp.*, 57 F.3d 56 (1st Cir. 1995); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir. 1993) ("A RICO claim under § 1962(c) is not stated where the subsidiary merely acts on behalf of, or to the benefit of, its parent."); *Chamberlain Mfg. Corp. v. Maremont Corp.*, 919 F. Supp. 1150, 1154-58 (N.D. Ill. 1996)(holding that where enterprise was an association-in-fact of the parent corporation and its subsidiary, it lacked its own distinct legal identity for purposes of § 1962(c)). In this case, Khurana did not plead any distinct roles for the subsidiary River Region and the parent corporation Innovative so that they might be regarded as having any distinctiveness from the alleged enterprise. "We would not take seriously . . . an assertion that a defendant could conspire with his right arm, which held, aimed and fired the fatal weapon." *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982). As the association-in-fact pleaded by Khurana is in reality the corporate entity, we must affirm the district court as to its dismissal of these claims against the corporate entities as the distinctiveness requirement is not met in relation to these two defendants. River Region and Innovative cannot simultaneously be both the enterprise and the named defendants. *See Securitron*, 65 F.3d at 263. Therefore, we conclude that Khurana's attempt to circumvent the distinction requirement in regard to the corporate defendants by pleading an association-in-fact theory must be rejected.

We must also consider the claims in relation to the other named defendants, the officers and employees of the two corporate entities. *See, e.g, Banks v. Wolk*, 918 F.2d 418, 424 (3d Cir. 1990) (leaving RICO action intact against certain individual defendants while dismissing the corporate defendant for failure to withstand distinctiveness requirement); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991) (considering § 1962(c) claim separately for each defendant's fulfillment of distinctiveness and other requirements). As we explained above, Khurana's complaint essentially pleads the corporation as the enterprise. Section 1962(c) may impose liability on individual corporate officers and employees who conduct the corporate enterprise which employs them through a pattern of racketeering activity. *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 266-269 (3d Cir. 1995); *United States v. Robinson*, 8 F.3d 398, 407 (7th Cir. 1993); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir. 1989); *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985); *see also Securitron*, 65 F.3d at 263. Accordingly, we reverse the dismissal of the remaining § 1962(c)-related claims against the three individual defendants.

## CONCLUSION

For the foregoing reasons, we REVERSE in part and AFFIRM in part. We affirm the district court's dismissal of Khurana's claims based on alleged violations of § 1962(c) and § 1962(d) (to the extent they allege conspiracy to violate § 1962(c)) against the two

28

corporate defendants.   We also affirm the district court's dismissal of all claims alleging injury from "illegal competition." Additionally, we affirm the district court's dismissal of Khurana's claims alleging termination injuries as a result of § 1962(b) and § 1962(c) violations.   We reverse the district court's dismissal of all other claims with directions to reinstate them for further proceedings consistent with this opinion.[9]

---

[9]   Our reversal of the dismissal of these claims is not meant to express any opinion as to other issues related to these claims which the district court may address on remand.  Given that the parties did not brief any other issues to the district court and that only the appellant briefed the properness of his pleadings of RICO violations, we have concerned ourselves only with the district court's legal conclusions supporting its dismissal of Khurana's RICO claims, namely the issues of proximate causation for his standing and the necessary distinctiveness for the § 1962(c)-related claims.  We leave any other issues or challenges for the district court's consideration in the first instance.  *See Youmons v. Simon*, 791 F.2d 341, 348 (5th Cir. 1986) (declining to consider challenges to the particularity with which mail and wire fraud allegations were pleaded in a RICO claim, preferring to remand to district court because the district court did not consider such challenges); *Morosani v. First Nat'l Bank of Atlanta*, 703 F.2d 1220, 1222 (11th Cir. 1983) (refusing to decide at interlocutory appeal stage theories for dismissing RICO claims that were not decided by district court, preferring to remand theories for district court to address in first instance).