William F. ANDERSON Jr., and Barry F. Breslin, Plaintiffs,

v.

Jack AYLING, Brian Kada, Paul Vanderwoude, Thomas H. Kohn, James P. Hoffa, International Brotherhood of Teamsters, et al., Defendants.

No. 02–CV–2352.

United States District Court, E.D. Pennsylvania.

Dec. 22, 2003.

John F. Innelli, Michael J. Molder, Innelli and Molder, Philadelphia, PA, for Plaintiffs.

Samuel L. Spear, Spear, Wilderman, Borish, Endy, Spear & Runckel, Marc L. Bogutz, William F. McDevitt, Christie, Pabarue, Mortensen & Young, Philadelphia, PA, Robert M. Baptiste, Susan Boyle, James F. Wallington, Baptiste and Wilder P.C., Washington, DC, for Defendants.

Stephen C. Richman, Markowitz & Richman, Philadelphia, PA, for Respondent.

## MEMORANDUM AND ORDER

ANITA B. BRODY, Judge.

Plaintiffs William Anderson, Jr. and Barry Breslin brought this civil RICO action under 18 U.S.C. § 1964(c)[1] to recover monetary compensation for damages they sustained from being terminated from their employment at Kurz–Hastings, Inc. and for injury to their membership in a local of the International Brotherhood of Teamsters.[2] Defendants Brian Kada, Paul Vanderwoude, Thomas Kohn, James Hoffa and the International Brotherhood of Teamsters (IBT) have moved to dismiss plaintiffs' complaint. For the reasons discussed below, defendants' motions are granted and the amended complaint is dismissed.

The facts of this case include many events which primarily took place over six weeks in 1999, and which involve a large cast of characters including the two plaintiffs, six defendants, and several others.[3]

1. 18 U.S.C. § 1964(c) provides a cause of action for "any person injured in his business or property by reason of a violation of section 1962".

2. The court has subject matter jurisdiction over this case based on the existence of a federal question.

3. I have not included the facts in the body of this opinion because the alleged injury is the only fact relevant to my standing analysis. However, I will recite the chronology here:

· At some unspecified time, an independent review board ("IRB") asked IBT Local 115 principal officer, John Morris, to recommend a trustee for Local 107. The IRB, at Morris' suggestion, appointed Gerald McNamera. Compl. ¶ 13.

· **February 28, 1999**: Defendant Brian Kada, an IBT Local 115 employee, approached plaintiff William Anderson and Michael Breslin (plaintiff Barry Breslin's brother) on behalf of Local 115. Kada revealed to Anderson and Michael Breslin that individuals including, *inter alia,* James Smith, Leo Reilly and Paul Vanderwoude, had been privately speaking with IBT president James Hoffa about the ouster of John Morris, the principal officer of Local 115. The men were told that Hoffa planned to throw Local 115 into a trusteeship, enabling the removal of John Morris from his union posts. In exchange, Hoffa would select replacements for the positions John Morris occupied on the Philadelphia Regional Port Authority, IBT Joint Council 53 and the IBT Pennsylvania Conference. Anderson and Michael Breslin were asked to support Morris' ouster and they refused. James Smith, Leo Reilly, Paul Vanderwoude and several of their friends were informed of this refusal. Compl. ¶ 14.

· **October 5, 1999**: John Morris questioned Kada about possible illegal trafficking in contraband cigarettes. Defendants Kada and Vanderwoude were employed at Allen Brothers, a tobacco jobber. Kada and Vanderwoude's trucks had been repeatedly seen at facilities which were not Allen Brothers accounts. These facilities, one of which was Kurz–Hastings, were Local 115 shops employing Local 115 members whose family members had been members of Local 107. Compl. ¶ 15.

· **October 8, 1999**: Joshua "Jocko" Johnson paid an unexpected visit to Kurz–Hastings and found that most of the Local 115 members who were on the clock were not at the facility. Johnson reported this to Morris, who began an investigation into the conduct of Kurz–Hastings employees regarding possible violations of 18 U.S.C. § 1955 (prohibition of illegal gambling). Some of the investigated employees are family members of former IBT Local 107 members. Compl. ¶ 16.

· **October 25, 1999**: Kurz–Hastings discharged the employees who were not at the facility on October 8, 1999. Compl. ¶ 17.

· **October 27, 1999**: John Morris informed Anderson that two employees in good stand-

All facts are taken from plaintiffs' amend- ed complaint or RICO case statement.[4]

ing of Kurz–Hastings were retiring and suggested Anderson apply for one of the positions. Morris told Anderson that Barry Breslin could also apply. Compl. ¶ 18.

· **October 28, 1999**: Anderson and Barry Breslin went to Kurz–Hastings to apply for jobs. On the same day, defendant Jack Ayling called Thomas Schatz, an IBT Ethical Practices Committee investigator in Washington D.C. Ayling told Schatz that Morris was placing two ex-convicts, William Anderson and Michael Breslin at Kurz–Hastings as replacement workers for some of those who were terminated on October 25, 1999 (in fact, Barry Breslin was applying, and the positions they sought had opened up because of retirements rather than terminations). Plaintiffs allege that Ayling told Schatz two lies: (1) that Anderson had either been suspected in or had been involved in the beating death of a sailor in Philadelphia, and (2) that Michael Breslin had a previous drug arrest for operating a major drug ring in Pennsylvania. Plaintiffs allege that these statements constitute wire fraud, a predicate act under Civil RICO. Compl. ¶¶ 19, 20.

· **October 29, 1999**: Defendant Kada phoned Schatz, and falsely told him that he had been assaulted during his interview with John Morris on October 5, 1999. Plaintiffs allege that this statement constitutes wire fraud, a predicate act under Civil RICO. Compl. ¶ 21.

· **November 2, 1999**: Plaintiffs were hired as special coating operators by Kurz–Hastings. Compl. ¶ 22.

· **November 15, 1999**: Defendant James Hoffa removed John Morris from his position as leader of Local 115, allegedly on the basis of an investigation which included the recommendation of Thomas Schatz. Hoffa imposed an emergency trusteeship on Local 115 and explained this action in a notice which included many allegedly false statements.

· **November 16, 1999**: Barry Breslin, along with members of Local 115, picketed outside of the Local 115 union hall to protest the ouster of John Morris. Compl. ¶ 24.

· **November 17, 1999**: William Anderson joined the picket line. Compl. ¶ 24.

· **November 19, 1999**: John Morris filed suit in the United States District Court for the Eastern District of Pennsylvania seeking injunctive relief from the emergency trusteeship imposed by Hoffa on November 15.

Defendant Kohn was one of the attorneys representing Hoffa. Compl. ¶ 25.

· **November 24, 1999**: 22 days after being hired, plaintiffs William Anderson and Barry Breslin were fired from Kurz–Hastings by general foreman Vic Franz. Anderson asked Franz why plaintiffs were being fired, and Franz responded, "I don't have a reason, I don't need a reason. I want you off the premises right now." Compl. ¶ 26.

· **December 1, 1999**: William Anderson and his father went to the Local 107 union hall for an IRB appointment. One of the Local's trustees told Anderson that Kohn wished to speak with him. Anderson, Anderson's father and Kohn met in a private office and Kohn introduced himself as the IBT's lawyer. Plaintiffs allege that Kohn said, "You tell us today, that John Morris told you to steal that wood [wood allegedly stolen from a pier in Glouster County, N.J. and allegedly used to build a conference room table in Local 115]' and we'll take care of this case today and we'll help you get your job back." Anderson responded that he didn't know what Kohn was talking about.

Anderson left this meeting with Kohn to attend an IRB hearing about a complaint that Gerald McNamera had lodged against him. The IRB hearing board (composed of members selected by Hoffa) suspended Anderson from the union for two years and imposed a $2,000 fine. McNamera subsequently lost a private criminal complaint against Anderson before Judge Seamus McCaffery. Anderson has not been able to get a job at Kurz–Hastings since November 24, 1999, despite applying for work in June 2000 and September 2001. Compl. ¶¶ 27–29.

· **December 1, 1999**: Barry Breslin was physically assaulted by defendant Vanderwoude while on the picket line outside the IBT Local 115 union hall. Vanderwoude mistakenly believed that plaintiff was Michael Breslin and was attempting to provoke a fight so that Michael Breslin's parole would be revoked. Breslin has not been able to gain employment at Kurz–Hastings since November 24, 1999, despite applying for work in June 2000 and September 2001. Compl. ¶¶ 30–31.

4. On a motion to dismiss, the court may dismiss a claim only if the plaintiff cannot dem-

Plaintiffs claim that defendants Ayling, Kada, Vanderwoude and Kohn are liable for violations of 18 U.S.C. § 1962(c), and that all defendants have violated 18 U.S.C. § 1962(d). Plaintiffs set forth their injuries as "the property interest they have in the jobs they held at Kurz–Hastings, Inc. and membership in a racketeer free local of the International Brotherhood of Teamsters." Compl. p. 1. Plaintiffs allege that the nature of their membership has suffered because of the alleged racketeering: "all of the members of Local 115 were injured by the corruption of their local." RICO Case Statement ¶ 15. Plaintiffs seek compensatory damages, treble damages pursuant to 18 U.S.C. § 1964(c), attorneys' fees and costs, and any other remedies or orders necessary to effectuate a just result.

### Discussion

Defendants have moved to dismiss plaintiffs' complaint. Defendants argue that: (1) plaintiffs lack standing; (2) no RICO pattern exists because of deficient pleading of continuity, absence of two predicate acts, and relatedness of the alleged acts of racketeering; (3) defendants are not sufficiently alleged to have participated in the racketeering; (4) any RICO claim is preempted by federal labor law, and (5) defective service of process warrants dismissal. Because I find that plaintiffs lack standing, I need not address defendants' other arguments for dismissal.

18 U.S.C. § 1964(c) creates a civil cause of action for RICO violations and articulates the standard for deciding if a plaintiff has standing to sue under RICO. Section 1964(c) provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court.

Therefore, under RICO for a plaintiff to have standing the plaintiff must be (1) a person; (2) who suffered injury; (3) to his business or property; (4) by reason of defendants' RICO violation under § 1962.[5] Because arguably plaintiffs are people who suffered injury to their business or property, the only issue on standing is whether plaintiffs' injury occurred "by reason of" defendants' violations of § 1962.

The Supreme Court shed light on the "by reason of" prong in *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In *Holmes*, the Supreme Court reversed the Ninth Circuit's decision that customers of insolvent brokerage houses who had not purchased any manipulated securities could bring RICO claims against the broker-dealers who committed the securities fraud. The Supreme Court noted that the link was "too remote between the stock manipulation alleged and the customers' harm ... [t]hat is, the conspirators have allegedly injured these customers only insofar as the stock manipulation first injured the broker-dealers and left them

onstrate any set of facts in support of the claim that would entitle him or her to relief. *Williams v. New Castle County*, 970 F.2d 1260, 1266 (3d Cir.1992). In considering the motion to dismiss, the court must accept as true all factual allegations in the complaint and all reasonable inferences that may be drawn therefrom, construing the complaint in the light most favorable to the plaintiff. *See Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315 (3d Cir.1997). Courts may consider the RICO

case statement in assessing whether plaintiffs' RICO claims should be dismissed. *Glessner v. Kenny*, 952 F.2d 702, 712, n. 9 (3d Cir. 1991).

5. A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

without the wherewithal to pay customers' claims." *Holmes,* 503 U.S. at 271, 112 S.Ct. 1311. The Court went on to explain that determining damages would be extremely problematic if proximate causation was not a requirement of RICO standing: "[i]f the nonpurchasing customers were allowed to sue, the district court would first need to determine the extent to which their inability to collect from the broker-dealers was the result of the alleged conspiracy to manipulate, as opposed to, say, the broker-dealers' poor business practices or their failures to anticipate developments in the financial markets." *Id.* at 272–73, 112 S.Ct. 1311. The Court applied the reasoning used in antitrust actions to find that defendant's action must be the proximate cause as well as the "but for" cause of plaintiff's injury. *Id.* at 268, 112 S.Ct. 1311.[6] *Holmes* thus stands for the proposition that when § 1964 says that the plaintiff must be injured "by reason of" a violation of § 1962, the section imposes a proximate cause requirement on the plaintiff.

Since *Holmes,* the RICO proximate cause inquiry has become factually based. Reviewing the jurisprudence in the area, Gregory P. Joseph lists the following factual considerations courts have made in these inquiries:

(1) whether the plaintiff's injury was a direct result of the alleged RICO violation, as opposed to being derivative of injury to another;

(2) whether the plaintiff was the intended target of the RICO offense;

(3) whether the injury to the plaintiff was a reasonably foreseeable consequence of the RICO violation;

(4) whether independent causes have, or may have, intervened between the RICO violation and the injury to the plaintiff;

(5) whether there is risk of multiple recoveries; and

(6) whether the plaintiff's injury was caused by the RICO offense itself or merely by public disclosure of the offense.

GREGORY P. JOSEPH, CIVIL RICO 37 (2d ed.2000) (quoting and summarizing the holdings in *Khurana v. Innovative Health Care Sys., Inc.,* 130 F.3d 143, 149 (5th Cir.1997), *vacated by Teel v. Khurana,* 525 U.S. 979, 119 S.Ct. 442, 142 L.Ed.2d 397 (1998); *In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 399–400 (2d Cir.1994); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 172 F.3d 223 (2d Cir.1999), *reversed in part by Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229 (2d Cir.1999)).

■ Because of closely analogous factual precedent in *Shearin v. E.F. Hutton Group,* 885 F.2d 1162 (3d Cir.1989) and in *Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000), a detailed analysis such as that in the Joseph jurisprudence is unnecessary. Both cases stand for the proposition that there is an

---

**6.** The Court explained that three reasons demand this holding: "First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Holmes,* 503 U.S. at 269–70, 112 S.Ct. 1311 (citations omitted).

insufficient nexus between the injuries caused by employment termination and a § 1962 violation to satisfy the proximate cause requirement of § 1964(c) standing. *Shearin* is instructive on the determination of whether plaintiffs have standing to pursue their claim under § 1962(c).[7] *Beck* provides a clear answer as to whether plaintiffs have standing to pursue their claim under § 1962(d).[8] Both § 1962(c) and § 1962(d) are alleged in the complaint.[9]

In *Shearin*, plaintiff alleged that defendants Hutton Inc. and Hutton Group created Hutton Trust as a front for the purpose of charging fees to customers of Hutton Inc. for trust services that were never performed. *Shearin*, 885 F.2d at 1164. Shearin claimed that defendants induced her to leave her previous employment and enter into an employment contract with Hutton Trust in order to perpetuate the facade of a bonafide trust company. Finally, Shearin alleged that defendants terminated her employment in order to prevent her from disclosing their illegal activities to the Delaware bank examiners. *Id.* Shearin sued under sections (a), (c) and (d) of 1962 for the injuries she suffered from losing both the job she left to work for Hutton Inc., and the job at Hutton Inc. The Third Circuit dismissed Shearin's claims under sections (a) and (c), explaining that Shearin "failed to plead injury resulting from defendants' violations of [those sections]":

Neither job loss can fairly be said to have resulted from violations of any of RICO's first three subsections or from the predicate acts necessary to establish these. The investment of unlawfully collected fees did not cause Shearin to lose her jobs. Nor did the securities and wire fraud through which the three companies ostensibly conducted their illicit enterprise. Nor [ . . . ] did the acquisition of the enterprise through the securities fraud scheme [ . . . ] cause Shearin's hiring or firing. More precisely, in none of these instances did any predicate act [ . . . ] cause the injuries of which Shearin complains.

*Id.* at 1168. The "predicate acts" discussed above are listed in 18 U.S.C. § 1961, and comprise an exhaustive list of "racketeering activit[ies]." This list includes murder, kidnapping, gambling, arson, robbery, bribery, extortion, and dozens of other crimes. 18 U.S.C. § 1961. It does not include employment termination, either lawful or unlawful. *Shearin* stands for the proposition that a terminated whistleblowing plaintiff does not have standing to bring a § 1962(c) claim based on the RICO violations he or she disclosed, because the ultimate injury caused by being terminated is not proximately related to a RICO violation. The most sympathetic reading of plaintiffs' complaint in the present case suggests that plaintiffs lost their jobs as a result of their opposition to the imposition of the. emergency trusteeship. Under *Shearin*, this allegation is insufficient to provide plaintiffs with standing to bring a § 1962(c) claim, because the

---

7. 18 U.S.C. § 1962(c) states that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

8. 18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

9. To the extent that *Shearin* discusses § 1962(d) it was abrogated by the Supreme Court in *Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

terminations did not occur "by reason of" the RICO violations.[10]

The Supreme Court decided this issue with respect to § 1962(d) in *Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). In *Beck,* plaintiff Robert A. Beck II was a former president, CEO, director and shareholder of Southeastern Insurance Group (SIG). *Beck,* 529 U.S. at 497, 120 S.Ct. 1608. SIG was an insurance holding company engaged in the business of writing surety bonds for construction contractors. Defendants were former senior officers and directors of SIG. Unbeknownst to plaintiff, defendants engaged in acts of racketeering. These acts of racketeering included the creation of an entity which demanded fees from contractors in exchange for qualifying them for SIG surety bonds, the diversion of corporate funds to personal uses, and the submission of false financial statements to regulators, shareholders, and creditors. Beck discovered defendants' unlawful conduct and contacted regulators concerning the financial statements. Defendants then orchestrated a scheme to remove Beck from the company, which involved hiring an insurance consultant to write a false report suggesting that Beck had failed to perform his material duty. The Board fired Beck the day after receiving the false report. *Id.* at 498, 120 S.Ct. 1608.

Beck sued defendants under RICO, § 1964(c), for violations of 1962 sections (a), (b), (c) and (d). Beck claimed to have standing based on the theory that his injury was proximately caused by an overt act done in furtherance of defendants' conspiracy. The Supreme Court focused its analysis on § 1962(d) to resolve a circuit split on the question "whether a person injured by an overt act in furtherance of a conspiracy may assert a civil RICO conspiracy claim under § 1964(c) for a violation of § 1962(d) even if the overt act does not constitute 'racketeering activity'." *Id.* at 500, 120 S.Ct. 1608. The Court held that such a plaintiff does not have standing, and explained that defendants' "alleged overt act in furtherance of their conspiracy is not independently wrongful under any substantive provision of the statute" and that "[i]njury caused by such an act is not, therefore, sufficient to give rise to a cause of action under § 1964(c)." *Id.* at 506, 120 S.Ct. 1608. Using the same analysis as the Third Circuit employed when discussing § 1962(c) in *Shearin,* the Supreme Court concluded by holding that "a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." *Id.* at 507, 120 S.Ct. 1608. The racketeering act of § 1962(d) directly caused the lack of employment but not the ultimate injury. Plaintiffs' injuries resulting from losing their jobs are therefore insufficient to allow them to proceed with their claim under § 1962(d), because these injuries are not proximately related to defendants' alleged § 1962(d) violations.

▮ Plaintiffs also allege that they have suffered damages to their "membership in a racketeer free local of the [IBT]."

---

10. *Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) abrogated *Shearin's* holding with respect to standing for § 1962(d) claims. The plaintiff in *Shearin* had also alleged a RICO violation under § 1962(d) based on her injury of being fired. After the discussion of plaintiff's standing under 1962 sections (a) and (c), *Shearin* considered whether a plaintiff alleging injury suffered from a termination could bring a § 1962(d) claim. The court found that termination was sufficient to provide standing under § 1962(d) because the conspiracy component of § 1962(d) did not mandate proximity between the injury and actual racketeering acts. *Beck* later held that proximity is required. *See* discussion *infra.*

Plaintiffs do not claim to have been denied membership to the IBT, but rather complain that "all of the members of Local 115 were injured by the corruption of their local." RICO Case Statement p. 7. "A showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir.2000) The injury must be specific or quantifiable. *See Maio*, 221 F.3d at 495; *Wolk v. United States*, 2001 WL 1735258 at *5 (E.D.Pa. Oct.25, 2001); *Burns v. Lavender Hill Herb Farm, Inc.*, 2002 WL 31513418 at *8 (E.D.Pa. Oct.30, 2002). Plaintiffs do not explain precisely what injuries they have suffered from being denied a "racketeer-free" membership. The imposition of the emergency trusteeship which plays a large role in the complaint's narrative has already been adjudicated and found legal in *Morris v. Hoffa*, 2001 WL 1231741 (E.D.Pa. Oct.12, 2001). Plaintiffs have not alleged a concrete financial loss resulting from the alleged racketeering at the IBT. Therefore, plaintiffs do not have standing based on this alleged injury.

*Conclusion*

After considering *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) and its progeny, I conclude that plaintiffs have failed to allege sufficient standing to pursue their RICO claims based on their injuries resulting from their employment terminations and their membership in a racketeer-free union. Therefore, I will grant defendants' motions to dismiss.