380 F.3d 480
 David DIAZ, Plaintiff-Appellant,
v.
Daryl GATES; Willie L. Williams; Richard Alarcon; Richard Alatorre; Hal Bernson; Marvin Braude; Laura Chick; John Ferraro; Michael Feuer; Ruth Galanter; Nate Holden, et al., Defendants, and
Bernard C. Parks, Chief of Los Angeles Police Department, Defendant-Appellee.
 No. 02-56818.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 8, 2003.
 Filed January 20, 2004.
 Amended August 23, 2004.
 
 Stephen Yagman, Esq., Venice, CA, for the appellant.
 Janet G. Bogigian, DCA, Los Angeles, CA, for the appellee.
 Appeal from the United States District Court for the Central District of California; Gary A. Feess, District Judge, Presiding. D.C. No. CV-01-06400-GAF.
 Before: BRUNETTI, NELSON, and SILVERMAN, Circuit Judges.
 
 ORDER
 
 1
 The opinion filed January 20, 2004, is amended. The amended opinion and Judge Silverman's dissent have been sent for filing.
 
 
 2
 No subsequent petitions for rehearing and petitions for rehearing en banc may be filed in response to the amended opinion.
 
 OPINION
 BRUNETTI, Circuit Judge:
 
 3
 David Diaz appeals the district court's dismissal of his complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Diaz brought suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, alleging wrongful conviction and incarceration. The district court determined that Diaz failed sufficiently to plead injury to "business or property" as required to proceed under RICO. We agree and affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 4
 The facts generally arise from alleged misconduct of various Los Angeles Police Department (LAPD) officers and other officials as part of the LAPD Rampart scandal. According to plaintiff's complaint, on or about July 13, 1998, Los Angeles Police Officers Armando Rodriguiz, Juan Parga, and Jose Ramirez fabricated evidence to the effect that plaintiff had committed assault with a deadly weapon, tampered with witnesses, and conspired to obtain the false conviction of plaintiff. Plaintiff further alleges that these LAPD officers, along with defendant William Eagleson, fabricated additional evidence to cause plaintiff's false conviction, and that all of them caused the kidnapping of plaintiff.
 
 
 5
 Due to these activities, plaintiff alleges that he was deprived of his ability to earn a living and suffered economic harm; namely, he asserts that, "[a]mong other forms of injury, plaintiff lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that plaintiff was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated."
 
 
 6
 Defendants moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) based on the contention that Diaz had not sufficiently alleged injury to business or property as required by the RICO statute. The district court agreed and dismissed Diaz's complaint without prejudice and with leave to amend. Diaz opted to stand by his allegations as originally pled and, in turn, allowed the period for amendment to expire. Upon the district court's subsequent dismissal with prejudice, Diaz appealed to this court.
 
 STANDARD OF REVIEW
 
 7
 A district court's order of dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir.1996). The review is limited to the contents of the complaint, id., although all allegations of material fact in the complaint are taken as true and construed in the light most favorable to plaintiff. Argabright v. United States, 35 F.3d 472, 474 (9th Cir.1994). The district court's order of dismissal should be affirmed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir.1993) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). The court may, however, affirm the district court's dismissal for failure to state a claim on any basis supported in the record. Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir.1999).
 
 DISCUSSION
 
 8
 RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (2003). Section 1962, in turn, lists four separate acts which form the basis for RICO liability: (a) to invest income derived from a pattern of racketeering activity in an enterprise; (b) to acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) to conduct the affairs of an enterprise through a pattern of racketeering activity; or (d) to conspire to commit any of the above acts. 18 U.S.C. § 1962(a)-(d). A plaintiff must show, therefore, an injury to business or property as well as a violation of one or more of the four acts above to recover under RICO.
 
 
 9
 RICO is to be construed broadly, Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497-98, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); however, despite Congress's expansive design, see United States v. Turkette, 452 U.S. 576, 586-87, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and express admonition that RICO is to "be liberally construed to effectuate its remedial purposes," Pub.L. 91-452, § 904(a), 84 Stat. 947, it is well established that not all injuries are compensable under RICO. See Oscar v. Univ. Students Co-Op. Ass'n, 965 F.2d 783, 785 (9th Cir.1992).
 
 
 10
 To recover under RICO, a plaintiff must demonstrate injury to business or property. A showing of such injury requires proof of concrete financial loss, not "mere injury to a valuable intangible property interest." Id. (quoting Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir.1990) (refusing to consider cancellation of insurance policy injury to property; viz, the loss of "protection ... afforded against potential financial loss in the future and the present peace of mind that flows from such protection" constituted personal injury, not injury to property)).
 
 
 11
 Moreover, this and other courts have consistently held that personal injuries are not recoverable under RICO. Id. at 785-86 (citing Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (dictum); Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3rd Cir.1991) (plaintiffs could not recover medical expenses and emotional distress resulting from their exposure to toxic waste); Berg, 915 F.2d at 464 (loss of security and peace of mind due to cancellation of insurance policy were not actionable under RICO); Rylewicz v. Beaton Services, Ltd., 888 F.2d 1175, 1180 (7th Cir.1989) (harassment and intimidation of litigants in an attempt to get them to settle lawsuit could not support RICO claim), rejected on other grounds by Schiffels v. Kemper Financial Services, Inc., 978 F.2d 344, 351 (7th Cir.1992); Grogan v. Platt, 835 F.2d 844, 846-47 (11th Cir.1988) (family of murder victim could not recover under RICO for economic consequences of murder), cert. denied, 488 U.S. 981, 109 S.Ct. 531, 102 L.Ed.2d 562 (1988); Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir.1986) (damages for physical injury and wrongful death resulting from exposure to toxic waste were not recoverable under RICO)).
 
 
 12
 Notably, in Grogan, cited with approval in both the Oscar majority and dissent, the families of murder victims could not recover under RICO for the economic consequences of their relatives' wrongful deaths. Grogan, 835 F.2d at 846-47. The Grogan court noted that
 
 
 13
 [o]ur task ... is not to decide whether the economic aspects of damages resulting directly from personal injuries could, as a theoretical matter, be considered injury to "business or property," but rather to determine whether Congress intended the damages that plaintiffs seek in this case to be recoverable under civil RICO.
 
 
 14
 Id. at 846. Upon considering the appellants' argument that a common-sense interpretation of the words "business or property" necessarily included the economic damages that result from injury to the person, the Grogan court concluded, "In our view, the ordinary meaning of the phrase `injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom." Id. at 847; see also Oscar, 965 F.2d at 791 (Kleinfeld, Hug, and Brunetti, JJ., dissenting) (discussing Grogan: "[M]urder is personal injury, not injury to property, and pecuniary losses flowing from the wrongful death could not transform personal injury into injury to property.")
 
 
 15
 It is true that some courts have found RICO standing in plaintiffs who alleged lost employment opportunity. The Fifth Circuit found standing in a physician who claimed impairment of his capacity to obtain future employment because his reputation was harmed by his association with RICO defendants. Khurana v. Innovative Health Care Systems, Inc., 130 F.3d 143, 149 (5th Cir.1997) (categorizing lost expectation of earnings as lost business income), rev'd on other grounds by Beck v. Prupis, 529 U.S. 494, 505, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2002). Relying on Khurana, a district court found RICO standing in a real estate developer who suffered "injury to his professional reputation." Sadighi v. Daghighfekr, 36 F.Supp.2d 279, 290 (D.S.C.1999). Another district court found RICO standing in a plaintiff claiming interference with the opportunity to pursue union employment. Hunt v. Weatherbee, 626 F.Supp. 1097, 1101 (D.Mass.1986).
 
 
 16
 At first blush, it might appear that Diaz's alleged injury is at least as tangible as that alleged in Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir.2002), our most recent decision addressing RICO standing. In Mendoza, documented farmworkers brought a RICO action alleging that fruit growers had conspired to hire undocumented workers in order to depress wages. Id. at 1166. We held that the plaintiffs had alleged sufficient RICO standing to survive a motion to dismiss. "That wages would be lower if, as alleged, the growers relied on a workforce consisting largely of undocumented workers, is a claim at least as plausible enough to survive a motion to dismiss, whatever difficulty might arise in establishing how much lower the wages would be." Id. at 1171. Diaz's claim, however, is distinguishable because he has not alleged that he lost actual employment, only that he "was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." Although the dissent asserts that defendant Parks conceded that the complaint can be read to allege that Diaz lost actual employment, that is not what the complaint says. Even when construing the complaint in a light most favorable to Diaz, the language of the complaint qualifies the assertion that Diaz lost employment and employment opportunities by stating, "in that plaintiff was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." We hold that this is insufficient to establish standing under RICO, as Diaz has failed to allege an injury to business or property. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001) (holding that unwarranted inferences are insufficient to defeat a motion to dismiss).
 
 
 17
 Indeed, Diaz merely alleges the consequential damages of being deprived of his right "to pursue gainful employment." Diaz alleges no out-of-pocket expenses resulting from the wrongful acts of the LAPD officers or other defendants. At most, Diaz's alleged injuries could be characterized as "mere injury to a valuable intangible property interest" in his right to pursue employment. See Oscar, 965 F.2d at 785; see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (whether a particular interest in considered property is usually a matter of state law); New Method Laundry Co. v. MacCann, 174 Cal. 26, 31, 161 P. 990 (1916) (holding that "right of a citizen to pursue any calling, business, or profession he may choose is a property right ..."). Nonetheless, such injury is insufficient to satisfy RICO's standing requirement. See Oscar, 965 F.2d at 785 & n. 1 (citing Berg, 915 F.2d at 464); see also Allman v. Philip Morris, Inc., 865 F.Supp. 665, 669 (S.D.Cal.1994) (citing Doe v. Roe, 958 F.2d 763, 768 (7th Cir.1992)) ("[T]he Court will not adopt a state interpretation of `property' that will contravene Congress' intent in enacting RICO.").
 
 
 18
 Further, much like the plaintiffs in Grogan, who pled economic losses stemming from the wrongful death of their relatives, Diaz ultimately alleges injury to his person resulting from his wrongful conviction and incarceration. Losing the right to pursue employment and employment opportunities from false imprisonment is no different than losing such employment opportunities from a wrongful death; the plaintiff in each action incurred some form of personal injury and in turn, suffered economic injuries therefrom. The Grogan court specifically rejected the notion that the pecuniary and nonpecuniary aspects of personal injury claims may be separated for purposes of RICO; rather the court noted that economic consequences and personal injuries are often intertwined, and therefore concluded that "pecuniary losses are so fundamentally a part of personal injuries that they should be considered something other than injury to `business or property.'" Grogan, 835 F.2d at 847. Indeed, it reasoned, "had Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, all of which will cause some financial loss, it could have enacted a statute referring to injury generally, without any restrictive language." Id. (citation omitted) (emphasis added by the Grogan court).
 
 
 19
 Diaz asserts that the Supreme Court decision in NOW saves his claim for loss of employment opportunities, as the Court in that case held that the plaintiffs' allegations that abortion protesters had used "threatened or actual force, violence, or fear to induce clinic employees, doctors, and patients to give up their jobs, give up their economic right to practice medicine, and give up their right to obtain medical services at the clinics" constituted sufficient injury to business or property to proceed under RICO. NOW, 510 U.S. at 253, 114 S.Ct. 798 (quoting Second Amended Complaint ¶ 97). Diaz's argument is unavailing, however. The plaintiffs in NOW alleging violations of RICO consisted only of two abortion clinics who complained of harm to their businesses from the protesters' alleged racketeering activities as well as cited losses and harm to their employees, doctors, and patients. Whether the employees, doctors, and patients could withstand a Rule 12(b)(6) dismissal motion if bringing suit on their own behalf was beyond the scope of the NOW decision; the Court simply held that the two clinics had sufficiently established standing to sue under RICO. Diaz's injuries do not resemble those averred in NOW. While the NOW plaintiffs alleged harm to their respective clinic businesses, Diaz's complaint speaks only of personal harm and pecuniary losses stemming therefrom. This type of injury is not the sort Congress sought to redress in enacting RICO. See Grogan, 835 F.2d at 847.
 
 
 20
 Because Diaz failed to allege "injury to business or property," he lacks standing to bring a claim under RICO. Therefore, the district court correctly dismissed his claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).
 
 
 21
 The district court's order of dismissal is AFFIRMED.
 
 
 22
 AFFIRMED.
 
 SILVERMAN, Circuit Judge, dissenting:
 
 23
 I respectfully dissent.
 
 
 24
 Diaz alleged that as a result of a predicate RICO act, he "lost employment."[1] I fail to see why this isn't enough to allege injury to his "business or property" and, therefore, to state a RICO claim.
 
 
 25
 This case is quite unlike Oscar v. University Students Co-op. Ass'n, 965 F.2d 783 (9th Cir.1992), in which tenants in a student housing complex brought a RICO action complaining of various forms of "unneighborly behavior" by the people next door. Id. at 784. Oscar did not allege any direct financial loss or out of pocket expense. "The only injury she has alleged is a `decrease in the value of her property' due to racketeering activity next door. We do not believe that such a decrease entails financial loss to Oscar." Id. at 786. We pointed out that the owner of the property might have been able to claim a diminution in the fair market value of the property, but that Oscar was a mere tenant. Id. at 786-87. The only way she could suffer tangible financial loss, we said, was if she tried to sublet the apartment, which she never alleged. Id. at 787.
 
 
 26
 The Oscar scenario is in sharp contrast to the present complaint. Diaz alleges that as a result of racketeering activity by rogue police officers, he was wrongly sent to prison and "lost employment." What could be a more direct financial loss than that? It would seem that Diaz's claim is at least as tangible as that alleged in Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir.2002), our most recent decision addressing RICO claims. In Mendoza, documented farmworkers brought a RICO action alleging that fruit growers had conspired to hire undocumented workers in order to depress wages. Id. at 1166. We held that the plaintiffs had alleged sufficient RICO standing to survive a motion to dismiss. "That wages would be lower if, as alleged, the growers relied on a workforce consisting largely of undocumented workers, is a claim at least as plausible enough to survive a motion to dismiss, whatever difficulty might arise in establishing how much lower the wages would be." Id. at 1171.
 
 
 27
 If lower wages caused by racketeering activity is a sufficient injury to property or business to withstand a motion to dismiss, why isn't loss of wages? As the majority recognizes, several other courts have found such loss sufficient.[2] Even Grogan v. Platt, 835 F.2d 844 (11th Cir.1988), cited with favor by the majority, did not foreclose the possibility that allegation of loss of wages could withstand a 12(b)(6) motion to dismiss. "We do not hold that plaintiffs may never recover under RICO for the loss of employment opportunities." Id. at 848.
 
 
 28
 It is true that RICO was not designed to redress every garden variety personal injury tort. So how do we sift the wheat from the chaff? Mendoza points the way. In Mendoza, the farmworker case, we applied to RICO the standard used in the antitrust context. 301 F.3d at 1168-69. We said:
 
 
 29
 In this circuit, we focus on three nonexhaustive factors in considering causation, that is whether the injury is `too remote' to allow recovery:
 
 
 30
 (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.
 
 
 31
 Id. at 1169 (quoting Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc., 241 F.3d 696, 701 (9th Cir.2001)); see also Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (holding that Congress intended to apply the antitrust proximate cause analysis in RICO).
 
 
 32
 By limiting RICO to cases of concrete financial loss to business or property directly caused by a predicate RICO act, we recognize RICO's limitations without imposing barriers that were not intended by Congress. "RICO is to be read broadly, ... [and] liberally construed to effectuate its remedial purposes." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497-98, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); see also National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 262, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). A wage earner's employment is his business. The majority's approach in this case is more than just unfair to wage earners harmed by racketeering. It is at odds with the salutary purpose of RICO — to provide an additional weapon in the war against organized crime.
 
 
 33
 Because Diaz pleaded an injury to his business or property, I would reverse the district court's ruling on that point. I express no opinion on whether the complaint contains other defects.
 
 
 
 Notes:
 
 
 [1]
 The complaint alleges that Plaintiff was injured in his "businesses and/ or property" and that he "lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that [he] was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." Complaint at ¶¶ 30, 31. At oral argument, counsel for appellee Parks agreed that, taking this allegation in the light most favorable to the pleader, the complaint can be read to allege that Diaz lost an existing job, in addition to future employment opportunities
 
 
 [2]
 See, e.g., Khurana v. Innovative Health Care Systems, Inc., 130 F.3d 143, 149 (5th Cir.1997), rev'd on other grounds by Beck v. Prupis, 529 U.S. 494, 505, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2002); Sadighi v. Daghighfekr, 36 F.Supp.2d 279, 290 (D.S.C.1999); Hunt v. Weatherbee, 626 F.Supp. 1097, 1101 (D.Mass.1986).