**MARINA POINT DEVELOPMENT ASSOCIATES, Plaintiff,**

v.

**UNITED STATES of America, Sandy Steers, and Does 1 through 10, Defendants.**

**No. EDCV041387RRZX.**

United States District Court,
C.D. California,
Western Division.

March 28, 2005.

James T. Jones, Foley & Lardner, Sacramento, CA, Robert D. Crockett, Latham & Watkins, Los Angeles, CA, S. Wayne Rosenbaum, Susanne Cecelia Washington, Foley & Lardner, San Diego, CA, for Plaintiff.

James R. Wheaton, Environmental Law Foundation, Oakland, CA, David Allen Greene, Sophia Sabrina Cope, First Amendment Project, Oakland, CA, Sean B. Hecht, Environmental Law Clinic, UCLA School of Law, Adam Brett Wolf, UCLA School of Law, Los Angeles, CA, Frank G. Wells, Environmental Law Clinic, UCLA School of Law, Los Angeles, CA, for Defendant Sandy Steers.

Bill Lockyer, Tom Greene, Theodora Berger, Susan Fiering, Harrison Pollak, Oakland, CA, for Amicus Curiae Attorney General of the State of California, in support of defendants.

## ORDER GRANTING DEFENDANT SANDY STEERS'S MOTION TO DISMISS THE ACTION WITH PREJUDICE

REAL, District Judge.

### I. INTRODUCTION

Plaintiff Marina Point Development Associates ("MPDA") filed a Complaint against Defendant Sandy Steers and three Forest Service employees[1] alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) pursuant to 18 U.S.C. §§ 1962(c) and 1962(d). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Steers brought a motion to dismiss the action with prejudice for failure to state a claim on the grounds that her alleged actions constituted protected First Amendment petitioning activities under the *Noerr–Pennington* doctrine, and that Plaintiff does not have statutory standing under RICO. This Court agrees. The motion is granted and Plaintiff's action against Steers is dismissed with prejudice.

### II. FACTUAL BACKGROUND

Plaintiff Marina Point Development Associates owns property on the north shore of Big Bear Lake in the community of Fawnskin, in San Bernardino County, California. Compl. ¶ 3. Plaintiff has been trying to develop the land into a "condominium resort" for approximately 20 years. Compl. ¶ 11. The development required a Clean Water Act § 404 permit from the Army Corps of Engineers. Compl. ¶ 12. After discussions with various state and federal agencies—including much debate about the project's potential impacts on the bald eagle—the Army Corps issued a § 404 permit. ¶¶ 13–17. The permit ultimately expired in September 2002. Compl. ¶ 18.

Plaintiff alleges that Robin Eliason, a Forest Service employee, wrote a "misleading" report on the bald eagle population in the Big Bear Lake area. Compl. ¶ 41. Plaintiff further alleges that Defendant Sandy Steers, a private resident of Fawnskin, sent this report to various governmental agencies, including the Army

---

1. The Complaint named the three Forest Service employees as defendants. However, the United States subsequently certified itself as the defendant in place of these individuals pursuant to 28 U.S.C. § 2679(d)(1).

Corps of Engineers, in order to convince the agencies to conduct additional environmental studies and to not "renew" the expired § 404 permit. Compl. ¶ 42. Defendants were partially successful in their efforts because, according to the Complaint, the "ACOE did not renew the 404 Permit at least in part based on the 'concerns' raised by Robin Eliason." Compl. ¶ 44.

Plaintiff filed this RICO action against Steers alleging that she committed mail and wire fraud by distributing Robin Eliason's report to various governmental agencies under the guise of it being an official Forest Service report rather than Eliason's personal work, and by conspiring with the Forest Service employees to violate numerous federal employee ethical rules. Plaintiff alleges that as a result of Steers's and the Forest Service employees' actions, it was deprived of honest governmental services, which in turn caused it to suffer unspecified financial losses. Compl. ¶¶ 25, 26, 29, 55, 56, 64, 65, 71. Plaintiff alleges that Steers and the Forest Service employees did not care about bald eagles but rather had the ultimate goal of increasing their own property values. Compl. ¶ 27.

### III. HEIGHTENED PLEADING STANDARD

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). Generally, "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir.1996) (citation omitted).

However, when, as here, "a claim involves the right to petition governmental bodies under *Noerr–Pennington*" a "heightened pleading standard" is applied, requiring the plaintiff to "satisfy more than the usual 12(b)(6) standard." *Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir.1991). Thus the complaint will be dismissed unless it includes allegations of "specific activities which bring the defendant's conduct" into one of the *Noerr–Pennington* exceptions. *Id.* at 533 (citing *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir.1976)) (internal quotation marks omitted). "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington* protection." *Id.* (citing *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 893 (9th Cir.1988)). "This heightened level of protection accorded petitioning activity is necessary to avoid a chilling effect on the exercise of this fundamental First Amendment right." *Id.* (internal quotation marks omitted).

### IV. NOERR–PENNINGTON DOCTRINE

Because Steers engaged in protected First Amendment petitioning activities, she is immune from civil RICO liability under the *Noerr–Pennington* doctrine.

The First Amendment to the United States Constitution guarantees "the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. The right to petition is "among the most precious of the liberties safeguarded by the Bill of Rights" and is "intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press." *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967).

█ "The Supreme Court has long recognized that for the Petition Clause to be a meaningful protection of the democratic process, citizens must be immune from

some forms of liability for their efforts to persuade government officials to adopt policy or perform their functions in a certain way." *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir.1998). This immunity, known as the *Noerr–Pennington* doctrine, protects and encourages active citizen participation in various democratic processes. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight. Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The *Noerr–Pennington* doctrine immunizes petitioning activity directed at any branch of government—be it judicial, legislative, executive or administrative. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 512–13, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

*Noerr–Pennington* immunity will not be granted, however, if a defendant's petitioning activity was a "sham." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991).[2]

■ Plaintiff contends that Steers' petitioning was a "sham" because it encompassed the making of misrepresentations to various governmental agencies. *See Cal. Motor Transp.*, 404 U.S. at 513, 92 S.Ct. 609. However, misrepresentations will only transform otherwise immune petitioning into unprotected "sham" petitioning if the petitioning were directed at an "adjudicatory" process, rather than a "political" process. *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1094 (9th Cir.2000); *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060–62 (9th Cir. 1998); *Boone v. Redevelopment Agency of*

the City of San Jose, 841 F.2d 886, 895 (9th Cir.1988).

■ An administrative process is deemed "political" or "adjudicatory" for purposes of the "sham" exception by considering the totality of the circumstances on a case-by-case basis. *Kottle*, 146 F.3d at 1062. The most important factor, however, is the extent to which the agency has "discretion and independence," characteristic of a "political" process, or must, instead, follow rules and other "enforceable standards subject to review," as in an "adjudicatory" process. *Id.*

■ This Court finds that all of the processes to which Steers directed her allegedly deceptive petitioning, including those of the Army Corps of Engineers, were "political processes." Therefore, the allegation of misrepresentations does not transform her constitutionally protected petitioning into a "sham." The *Noerr–Pennington* doctrine applies. Steers is immune from liability.

## V. STATUTORY STANDING UNDER CIVIL RICO

Steers's motion to dismiss is granted on the independent basis that Plaintiff does not have statutory standing to bring a civil RICO claim. This Court finds that Plaintiff has not suffered the requisite injury to "business or property," and any injury Plaintiff might have suffered was not the direct result of Steers's alleged racketeering activity.

A private party may bring a civil RICO claim only if it has been "injured in his business or property by reason of a viola-

---

**2.** The most basic formulation of the "sham" exception is when a defendant abuses a governmental *process* with neither the desire nor expectation of achieving a governmental *result* from that process. *Id.* However, Plaintiff concedes that Steers actually sought, and indeed achieved, a governmental result—specifically, new environmental studies and "non-renewal" of the Clean Water Act § 404 permit. Compl. ¶ 42, 44. Thus this most basic formulation of the "sham" exception is not at issue in this case.

tion of section 1962." 18 U.S.C. § 1964(c). These standing requirements serve to keep civil RICO true to "the original conception of its enactors." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 500, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).[3]

 The Ninth Circuit has defined "business or property" injury to include only tangible and concrete financial loss. *Guerrero v. Gates,* 357 F.3d 911, 920 (9th Cir.2004). One who has not suffered this requisite tangible injury does not have standing to bring a civil RICO claim. *Id.* Additionally, financial loss that merely *flows* from and is dependent on an intangible injury is not a cognizable claim of injury to "business or property" under section 1964(c). *Guerrero,* 357 F.3d at 920–21 (holding that economic injuries flowing from plaintiff's core intangible injury did not confer statutory standing); *Diaz v. Gates,* 380 F.3d 480, 485 (9th Cir.2004) ("[The] complaint speaks only of personal harm and pecuniary losses stemming therefrom. This type of injury is not the sort Congress sought to redress in enacting RICO."); *Oscar v. University Students Co–operative Association,* 965 F.2d 783, 788 (9th Cir.1992) (citing with approval a Seventh Circuit case that "reject[ed] a RICO claim for economic losses which derived from a fundamentally personal injury").

Plaintiff's core claim of injury is the "deprivation of the intangible right to honest governmental services." Compl. ¶¶ 25, 26, 29, 55, 56, 65. The entire Complaint rests on allegations that the Forest Service employees abused their official positions for private gain and that Steers went along with this "scheme." Compl. ¶ 27. Plaintiff has characterized this case as being about "political corruption."

 However, the deprivation of the right to honest governmental services is not a tangible and concrete financial loss, and so is not injury to "business or property" as required by section 1964(c). *Ove,* 264 F.3d at 825. Plaintiff's claim of financial loss is completely dependent on, and flows from, this intangible injury. Thus MPDA lacks statutory standing to bring a civil RICO action.

MPDA also lacks statutory standing under civil RICO because any injury it might have suffered was not the direct result of, or proximately caused by, Steers's alleged racketeering activity. *See Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). It was governmental actions—specifically those of the Army Corps of Engineers—that directly injured Plaintiff, thus breaking the causal link between Steers's alleged actions and Plaintiff's alleged injury. *See Oki Semiconductor Co. v. Wells Fargo Bank, National Association,* 298 F.3d 768 (9th Cir.2002); *Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303 (9th Cir.1992); *Association of Washington Public Hosp. Dists. v. Philip Morris, Inc.,* 241 F.3d 696 (9th Cir.2001); *Pillsbury,*

---

**3.** The requirement that a civil RICO plaintiff have been injured in his "business or property" is an important limitation. "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff. Requiring that a plaintiff demonstrate a financial loss to her business or property is consistent with that purpose. It is also consistent with what the Supreme Court has termed the 'restrictive significance' of the phrase 'injured in his business or property.'" *Oscar,* 965 F.2d at 786

(quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)). Offer of Compromise and Settlement referred to above and execute and deliver to Petitioner Encompass Insurance Company a Release in full and final satisfaction of any and all claims which said minor and Ms. Joliff may have against said Ryan Holle and Encompass Insurance Company arising out of the accident referred to above, and to execute all further papers which may be necessary to effectuate such settlement.

*Madison & Sutro v. Lerner,* 31 F.3d 924 (9th Cir.1994).

## VI. DISMISSAL WITH PREJUDICE

Furthermore, the action against Steers is dismissed without leave to amend and with prejudice because Plaintiff cannot allege "other facts consistent with" the Complaint that could "possibly cure the deficienc[ies]" identified herein. *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d, 1393, 1401 (9th Cir.1986). *See also Ove,* 264 F.3d at 825.

## VII. CONCLUSION

Steers's motion to dismiss the action with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted because she is immune from liability under the First Amendment's *Noerr–Pennington* doctrine, and because Plaintiff MPDA does not have statutory standing to bring a civil RICO claim.

IT IS SO ORDERED.