PER CURIAM Opinion; Concurrence by Judge REINHARDT; Concurrence by Judge KLEINFELD; Concurrence by Judge BERZON; Dissent by Judge GOULD.
PER CURIAM.
We examine whether a false imprisonment that caused the victim to lose employment and employment opportunities is an injury to “business or property” within the meaning of RICO.
Facts
Diaz claims to be a victim of the Los Angeles Police Department’s infamous Rampart scandal. He sued over two hundred people connected with the Los Ange-les Police Department (LAPD) or Los Angeles city government under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, alleging that LAPD officers had “fabricated evidence” that he had committed assault with a deadly weapon, and that they had “tampered with witnesses and conspired to obtain [a] false conviction” against him, Compl. ¶ 16. As a consequence, Diaz claims, “[ajmong other forms of injury, [he] lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that [he] was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated.” Compl. ¶ 31.
Defendant Parks moved to dismiss, arguing, among other things, that Diaz lacked standing because he did not allege an injury to “business or property” as required by RICO. See 18 U.S.C. § 1964(c). The district judge agreed and dismissed without prejudice and with leave to amend. Diaz did not amend, and the district judge then dismissed with prejudice. A divided panel of our court affirmed. Diaz v. Gates, 380 F.3d 480 (9th Cir.2004). We took the case en banc. Diaz v. Gates, 389 F.3d 869 (9th Cir.2004).
Analysis
1. The district judge, citing Oscar v. University Students Cooperative Ass’n, 965 F.2d 783 (9th Cir.1992) (en banc), reasonably applied the law of RICO standing as it existed at the time. In Oscar, we held that RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in “concrete financial loss.” Id. at 785. Oscar, a tenant in an apartment building, alleged that she and her co-plaintiff had “lost the use and enjoyment of their ‘property’' — -that is, their rental interest” — as a result of the racketeering activity in their building, which included drug dealing, violence and “other crimes, misdemeanors, nuisances, and annoyances.” Id. at 784-85. Because Oscar did not own her interest, we reasoned, the only way she could suffer a financial loss would be “if she had an interest she could sublet and the racketeering enterprise reduced the rent she could charge to sublet her apartment.” Id. at 787. But Oscar never alleged that she had wanted or tried to sublet the apartment — or, for that matter, that she had a right to do so — rendering “[a]ny supposed loss ... purely speculative.” Id. Thus, we concluded that she had not suffered concrete enough financial injuries for purposes of RICO. The only injuries Oscar properly alleged — “personal discomfort and annoyance,” id. (quoting Ingram v. City of Gridley, 100 Cal.App.2d 815, 224 P.2d 798, 803 (1950)) (internal quotation *899 marks omitted) — were personal, and so there was no injury to “business or property” within the meaning of the statute.
Intervening easelaw, which the district judge obviously did not have access to, has clarified the Oscar standard. A month after the district judge dismissed Diaz’s complaint, we decided Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir.2002), where a class of agricultural laborers alleged that their employers had depressed their wages by illegally hiring undocumented workers at below-market wages. The agricultural workers could not “show a ‘property right’ in the lost wages, by showing that they were promised or contracted for higher wages.” But they did allege an injury to a property interest, the “legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes.” See id. at 1168 n. 4. We held this property interest sufficient to provide standing under RICO. See id. at 1168. Diaz has alleged just such an interference with his business relations.
2. Mendoza did not elaborate on the source of the “legal entitlement to business relations,” relegating its discussion of the nature of the injury to a footnote. We believe the best-reasoned approach is that of Doe v. Roe, 958 F.2d 763 (7th Cir.1992), under which we typically look to state law to determine “whether a particular interest amounts to property,” id. at 768.
Doe sued her divorce attorney Roe under RICO, alleging that Roe had defrauded her and misused his position to coerce her into having sex with him over a period of several years. Doe, who had little money, had left her original divorce attorney and retained Roe on the understanding that her (soon to be ex-) husband would pay any fees beyond the retainer fee she had already paid. She acceded to his sexual overtures because she was afraid that he would otherwise stop working on her case, leaving her unable to afford a new lawyer. Doe’s husband eventually caught Doe and Roe in the act and, understandably, refused to pay any of Roe’s fees. Roe nonetheless demanded full payment for his legal services, but forgave Doe’s debts to him in exchange for continuing sexual relations. Id. at 765-66.
Doe argued that Roe’s wrongful exaction of sexual services was an injury to property and could therefore support her RICO claim. The Seventh Circuit disagreed: “[Wjhether a particular interest amounts to property is quintessentially a question of state law.” Id. at 768. And “ ‘sexual labor’ has no legal value in Illinois, where the courts have long held that contracts for sexual services are unenforceable as a matter of public policy.” Id. Thus, the requisite business or property interest was missing. Doe clearly doesn’t stand for the proposition that employment cannot be property under RICO, or it would have been superfluous for the Seventh Circuit to hold that employment as a provider of sexual services was not property under state law.
Doe had another theory. After the relationship with Roe turned sour, she alleged, Roe threatened her safety, which made her invest in a home security system and miss several days of work. Id. at 769-70; see also Doe v. Roe, 756 F.Supp. 353, 356, 359 (N.D.Ill.1991). Naturally, she also hired a new lawyer. Doe argued that the loss of wages, the costs of the security system and the new lawyer, and other “miscellaneous expenditures,” 958 F.2d at 769, were injuries to property. Here, too, the court disagreed:
Doe blurs the distinction between proprietary and personal injuries. Contrary to what Doe seems to suggest, whether she can show a financial loss does not, by definition, establish that she has suffered a business or property inju *900 ry within the meaning of § 1964(c). Most personal injuries — loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few — will entail some pecuniary consequences....
Doe’s loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress — and therefore reflect personal injuries which are not compensable under RICO.
Id. at 770. Again, although Doe alleged “loss of earnings,” this was deemed insufficient to qualify as a business or property interest under RICO “as construed by Illinois law.” Id. Thus, no injury to a business or property interest was actually alleged.[1]
We agree with the Seventh Circuit. Without a harm to a specific business or property interest — a categorical inquiry typically determined by reference to state law — there is no injury to business or property within the meaning of RICO.
Contrary to the dissent’s suggestion, dissent at 914, our approach does not create RICO liability for every loss of wages resulting from a personal injury. Doe, unlike Oscar, suffered some tangible financial losses as a result of her emotional distress, but, like Oscar, failed to allege harm to any property interest valid under state law. Diaz, on the other hand, has alleged both the property interest and the financial loss. The harms he alleges amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law. See Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740, 750-51 (1995) (discussing torts of “interference with an existing business contract” and “interference with commercial relations”); see also Restatement (Second) of Torts § 766A & cmt. e (intentional interference with another’s performance of his own contract); id. § 766B & cmts. c-d (intentional interference with prospective contractual relations); Reeves v. Hanlon, 33 Cal.4th 1140, 17 Cal.Rptr.3d 289, 95 P.3d 513, 517 (2004) (interference with performance of contract is intentional if defendant knew “that the interference was certain or substantially certain to occur as a result of his or her action”). And his claimed financial loss? He could not fulfill his employment contract or pursue valuable employment opportunities because he was in jail.
3. The three-judge panel tried to distinguish Mendoza on the theory that Diaz did not allege “that he lost actual employment, only that he ‘was rendered unable to pursue gainful employment.’ ” Diaz, 380 F.3d at 484. This distinction is untenable, for Mendoza speaks generally of a “legal entitlement to business relations.” 301 F.3d at 1168 n. 4. Nor do we endorse such a distinction today, for California law protects the legal entitlement to both current and prospective contractual relations. See page 900 supra. There may be a practical difference between current and future employment for purposes of RICO — for instance, it may be easier to *901 prove causation or determine damages for a plaintiff who has lost current employment — but this difference is not relevant to whether there was an injury to “business or property.”
Similarly, the dissent seeks to distinguish Mendoza on the theory that the farm workers’ loss of wages was the “direct target” of the conspiracy, while Diaz’s injury was “merely derived from,” and a “secondary effect” of, his false imprisonment. See dissent at 907, 909, 911, 914. But this distinction founders on the language of the statute: The only requirement for RICO standing is that one be a “person injured in his business or property by reason of a violation of section 1962.” 18 U.S.C. § 1964(c). And the Supreme Court has already told us that “by reason of’ incorporates a proximate cause standard, see Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), which is generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts, see Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 162 N.E. 99, 100-01 (1928).
Though the dissent is wrong to suggest that our approach would confer standing on any plaintiff RICO-suave enough to allege lost employment, it is right to point out that our approach allows more claims to go forward than its more restrictive theory. See dissent at 913-914. But these policy consequences, assuming they are undesirable, cannot blind us to the statutory language. In Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court examined the Second Circuit’s narrow interpretation of RICO, which, “[i]n response to what it perceived to be misuse of civil RICO by private plaintiffs,” read various limitations into section 1964(c), including the requirement that the racketeering activity have produced a “ ‘racketeering injury.’ ” Id. -at 481, 105 S.Ct. 3275. “Racketeering activity” is a broad concept, which “consists of no more and no less than commission of a predicate act.” Id. at 495, 105 S.Ct. 3275. By contrast, a “racketeering injury,” under the Second Circuit’s definition, was an injury “different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter.” Sedima, S.P.R.L. v. Imrex Co., 741 F.2d 482, 496 (2d Cir.1984). While the Supreme Court “understood] the [Second Circuit’s] concern over the consequences of an unbridled reading of the statute,” which had expanded far beyond the mob-related concerns that had originally inspired it, see 473 U.S. at 481, 499, 105 S.Ct. 3275, it rejected such a construction:
If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous “racketeering injury” requirement.
Id. at 495, 105 S.Ct. 3275.
There is similarly no room in the statutory language for an additional, amorphous requirement that, for an injury to be to business or property, the business or property interest have been the “direct target” of the predicate act. The statute is broad, but that is the statute we have. Were the standard as the dissent claims, we would have the anomalous result that one could be liable under RICO for destroying a business if one aimed a bomb at it, but not if one aimed at the business owner, missed and hit the business by accident, or if one *902 aimed at the business owner who happened to be in the business at the time.
The dissent’s flawed approach is similar to that of Grogan v. Platt, 835 F.2d 844 (11th Cir.1988). In Grogan, FBI agents wounded and slain in a shootout sued the criminal suspects responsible for their injuries and deaths. The Eleventh Circuit denied recovery, even though the plaintiffs had apparently alleged “lost employment opportunities” as one of their forms of injury, id. at 848:[2]
We do not hold that plaintiffs may never recover under RICO for the loss of employment opportunities. We merely hold that the appellants cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim.
Id. The Eleventh Circuit’s “most properly understood as part of’ test is subject to the same critique as the dissent’s “direct target” test. Diaz suffered two types of injuries: (1) the personal injury of false imprisonment and (2) the property injury of interference with current or prospective contractual relations. Treating the two as separate, and denying recovery for the first but letting the suit go forward on the second, is both analytically cleaner and truer to the language of the statute.
4. If Diaz properly alleges that his injuries were “by reason of a violation of section 1962,” there is nothing to prevent him from “su[ing] therefor.” See 18 U.S.C. § 1964(c). Diaz’s complaint tracks the language of section 1962, which makes it illegal to, among other things, acquire or maintain control of an “enterprise,” or conduct or participate in its affairs, through a “pattern of racketeering activity.” Compare id. § 1962(b)-(c) with Compl. ¶¶ 26-27. Diaz alleges that the LAPD and various subdivisions are “enterprises” within the meaning of 18 U.S.C. § 1961(4). See Compl. ¶ 23. And he alleges acts that seem to fall within the definition of “racketeering activity,” 18 U.S.C. § 1961(1), and seem to form a “pattern,” id. § 1961(5).[3]
Whether these allegations of section 1962 violations are adequate is a matter on which we express no view.[4] The district *903 judge stated that Diaz’s complaint “suffered] from many of the same deficiencies ... previously identified” in another Rampart-related case, Serrano v. City of Los Angeles, No. CV 00-13356 GAF (AJWx) (C.D. Cal. June 29, 2001) (order dismissing RICO claims), but his dispositive ruling on standing made it unnecessary for him to state precisely which of these deficiencies applied to Diaz’s case. We need not determine whether the district judge’s incorporation by reference of “many” of the deficiencies identified in a different case was sufficient to provide adequate notice of the particular deficiencies. Cf. Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir.1962). Now that we have set aside the district court’s ruling as to standing, the district judge should, if he wishes to reinstate the order of dismissal, identify the specific deficiencies in a supplementary order, and plaintiff should then be given an opportunity to amend his complaint accordingly.
REVERSED AND REMANDED.

. The dissent claims that "Doe alleged the same injury to business or properly as Diaz: lost employment wages,” dissent at 913 n. 7, but it confuses the mere loss of something of value (such as wages) with injury to a property interest (such as the right to earn wages). The Seventh Circuit gave no indication in Doe that the plaintiff had alleged loss of the right to earn wages as a property interest recognized by Illinois law. Thus, Doe does not speak to whether a loss of earnings could be an injury to a property interest if a plaintiff properly alleges it as such — as Diaz does. Doe merely teaches that financial losses, including lost wages, are insufficient by themselves to confer standing under RICO.

.We say “apparently” because the Eleventh Circuit does not tell us how the claim for lost employment opportunities was raised in Gro-gan. It is entirely possible that the plaintiffs in Grogan, unlike Diaz, failed to allege a right to employment that was recognized as property under state law. This may be why the court treated it as part of their personal injury claim. If so, Grogan is consistent with our approach and that of the Seventh Circuit in Doe. What we do know for certain, however, is that the Eleventh Circuit does not expressly address the situation where a plaintiff actually alleges a state-protected property interest, as Diaz does here.
The dissent speculates that Diaz must be in the same position as Grogan, because "[w]e have no clue from Diaz's complaint what 'employment' Diaz has alleged to have lost.” Dissent at 913. That misses the point. We may not know precisely what type of employment Diaz alleges to have lost, but we know that Diaz alleges that his lost employment is an injury to a property interest as defined by state law. Reading Grogan, we know nothing about how Florida law treated the right to earn wages at the time Grogan brought his lawsuit, nor whether he claimed that his loss amounted to a property interest.

. Because the district court only addressed whether plaintiff alleged a proper injury, and not whether the injury was "by reason of” the RICO violation, we decline to address the RICO causation requirement in the first instance. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (“It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.”).

. Nor, at this early stage of the litigation, do we deem it appropriate to speculate as to the merits of Diaz's claim. Cf. dissent at 907 - 908 n. 1 ("An observer might wonder if there is any substance at all to the RICO claim asserted by Diaz.”).